IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK J. ALLEN, JR.,

               Plaintiff,

   v.

WELLS FARGO, N.A. d/b/a AMERICA'S
SERVICING COMPANY,

             Defendant.

CIVIL ACTION
No. 14-5283

## OPINION

**Slomsky, J.**                                              **August 27, 2015**

## I.    INTRODUCTION

On August 13, 2014, Plaintiff Frank J. Allen Jr.  ("Allen") instituted this action against Defendant Wells Fargo, N.A., d/b/a/ America's Servicing Company ("Wells Fargo") after Wells Fargo filed a foreclosure proceeding involving one of Allen's rental properties.  The property was subsequently sold at a sheriff's sale.  After foreclosure, but before the sheriff's sale, Allen applied to Wells Fargo for a short sale[1] of the property, but Wells Fargo denied the application.  Allen, proceeding pro se, claims that the denial of his short sale application caused him injury.

Allen then filed a five-count Complaint in state court against Wells Fargo alleging the following claims: (1) "deceptive business practices"; (2) negligence; (3) intentional infliction of emotional distress ("IIED"); (4) unjust enrichment; and (5) negligent misrepresentation.  (Doc. No. 1, Ex. A.)  The case was removed by Wells Fargo to this Court based on diversity of citizenship jurisdiction.  Wells Fargo thereafter filed a Motion to Dismiss, which is currently

---

[1]  A short sale is "when the lender agrees to release the property lien for less than the amount that is owed," and is "more complex than a regular purchase transaction."  (Doc. No. 6, Ex. B at 37.)

before the Court.  (Doc. No. 5.)  For reasons that follow, Wells Fargo's Motion to Dismiss will

be granted and Allen's Complaint will be dismissed.

## II.    FACTUAL BACKGROUND[2]

Allen owns several residential rental properties in Philadelphia.  (Doc. No. 1, Ex. A ¶¶ 6-

7.)  Allen's claims in this case arise as a result of the foreclosure and sheriff's sale of one of his

rental properties, a house located at 164 West Salaignac Street, Philadelphia, Pennsylvania

19128 ("the property").  (Id. ¶¶ 7-8.)  Allen purchased the property in 2004 subject to a

mortgage originally held by Trident Mortgage Company, LP.  (Id. ¶ 7.)  The mortgage was

subsequently transferred to Wells Fargo in October 2010.  (Doc. No. 5, Ex. 2.)

Allen apparently became delinquent in making payment on the mortgage prior to its

acquisition by Wells Fargo.  (Doc. No. 1, Ex. A ¶ 8; Doc. No. 5, Ex. 4 at 6.)  On October 22,

2010, Wells Fargo began an in rem foreclosure proceeding on the property in the Court of

Common Pleas of Philadelphia County.  (Doc. No. 5, Ex. 3.)  On March 28, 2011, the court

---

[2]  The facts are drawn from the following documents:  the Complaint, which is attached to the
Notice of Removal (Doc. No. 1, Ex. A), the state court docket sheet of Wells Fargo's in rem
proceeding against Allen (Doc. No. 5, Ex. 3), the Sheriff's Deed (Doc. No. 5, Ex. 5), and the
Transfer Tax Certification from the June 5, 2012 Sheriff's Sale (Id.), which are all attached to the
Motion to Dismiss.  In addition, as part of Allen's Response to the Motion to Dismiss, he
attached his contract with a buyer for the short sale (Doc. No. 6, Ex. A) and the "Short sale
guide" published by Wells Fargo, referred to hereafter as the "short sale brochure" (Doc. No.
6, Ex. B.)

The documents noted are either public records of which a court can take judicial notice,
documents integral to the claims, or both.  In deciding a motion to dismiss, a court may
consider "documents that are attached to or submitted with the complaint, and any 'matters
incorporated by reference or integral to the claim, items subject to judicial notice, matters of
public record, orders, [and] items appearing in the record of the case.'"  Buck v. Hampton
Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R.
Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).  Additionally, "a court may
consider an undisputedly authentic document that a defendant attaches as an exhibit to a
motion to dismiss if the plaintiff's claims are based on the document."  Dougherty v. Wells
Fargo Home Loans, Inc., 425 F. Supp. 2d 599, 602-03 (E.D. Pa. 2006) (quoting Pension
Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)
(internal quotation marks omitted)).

2

issued a default judgment against Allen after he failed to reply to the complaint filed in the foreclosure action, which Allen did not contest.  (Id. at 9.)  Two months later, in May 2011, the court issued a writ of execution, which would have been followed by a sheriff's sale of the property.  (Id.)  In response to the writ, Allen filed two motions to stay execution of the writ.  (Id. at 11, 13.)  The court granted both motions, and ordered two separate extensions of the sheriff's sale.  (Id. at 12, 15.)  On February 12, 2012, the court postponed the sheriff's sale until June 5, 2012.  (Id. at 15.)

Following foreclosure proceedings but prior to the sheriff's sale, Allen attempted to sell the property through a process known as a "short sale."  (Doc. No. 1, Ex. A ¶ 9.)  As noted above in footnote one, Wells Fargo describes a short sale as "when the lender agrees to release the property lien for less than the amount that is owed," and describes the process as "more complex than a regular purchase transaction."  (Doc. No. 6, Ex. B at 37.)  Allen learned of the short sale process through the short sale brochure published on the Wells Fargo website.  (Id. at 35.)  The nine-page brochure contains information on the short sale process.  (Id. at 37.)  The brochure notified consumers, however, that "foreclosure proceedings continue while the homeowner pursues a short sale."  (Id. at 39.)

Allen attempted to utilize the short sale process by speaking to a Wells Fargo representative, finding a potential buyer, and entering into an agreement of sale with the potential buyer to sell the property for $239,500.00.  (Doc. No. 1, Ex. A ¶ 9; Doc. No. 6, Ex. A.)  The agreement of sale for the short sale application is dated April 12, 2012 (Doc. No. 6, Ex. A)—more than one year after the March 28, 2011 judgment in foreclosure against the property.  (Doc. No. 5, Ex. 3 at 9.)  Upon receipt of Allen's application for the short sale, Wells Fargo denied the application as untimely.  (Doc. No. 1, Ex. A ¶ 13.)  In its explanation of denial,

Wells Fargo informed Allen that his application was missing certain required authorizations. (Id. ¶¶ 12, 18.)   Thereafter, on May 11, 2012, the Court of Common Pleas of Philadelphia County granted a motion filed by Wells Fargo to reassess the value of the property and damages and adjusted it to $241,043.12 plus interest.   (Doc. No. 5, Ex. 3 at 15-16.)   Thus, on June 5, 2012, the property was sold at a sheriff's sale to Federal National Mortgage Corporation ("Fannie Mae") for costs totaling $7,400 in accordance with the sheriff's sale procedure.   (Doc. No. 5, Ex. 5 at 2-3.)

Allen does not allege that he is responsible to pay Wells Fargo for losses it sustained on the mortgage.   Furthermore, Wells Fargo is not seeking any deficiency from Allen because the statute of limitations for seeking the deficiency has passed.   (Doc. No. 13, Mot. to Dismiss Hr'g Tr. 9:16-18, Nov. 25, 2014.) Rather, Allen's claims arise from Wells Fargo's denial of his short sale application.   Allen avers that Wells Fargo did not timely respond to his questions regarding the short sale application process, allowing the time for the short sale to expire and the application to be rejected.   (Doc. No. 1, Ex. A ¶¶ 11-13.)   Additionally, Allen claims that Wells Fargo purposefully thwarted his efforts to consummate a short sale by failing to notify him about what additional documents were needed to complete the sale.   (Id. ¶¶ 11-13, 18-19.)

Allen asserts that the failure to complete the short sale caused him unspecified monetary harm, unspecified damage to his credit, and emotional and other harm.   (Doc. No. 1, Ex. A ¶¶ 22-23; Doc. No. 1 at 7.)   As noted previously, Allen has filed a five-count Complaint.   In Count I, Allen alleges "deceptive business practices,[3]" arguing that Wells Fargo deliberately took actions to force Allen's short sale application to be submitted too late for approval.   (Doc.

---

[3]   Pennsylvania law does not recognize a cause of action titled "deceptive business practices." For purposes of this Opinion, the Court will consider Allen's claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which creates a private right of action for deceptive practices.   73 Pa. Cons. Stat. §§ 201-1 et seq. (2007).

No. 1, Ex. A ¶ 17.)  In Count II, Allen alleges negligent misrepresentation.  Allen claims that Wells Fargo purposefully concealed necessary information from him that was needed to process his application for the short sale.  (Id. ¶¶ 17-19.)  In Count III, Allen avers negligence, claiming that Wells Fargo violated its alleged duty to inform Allen of the necessary procedures for the short sale, causing Allen's short sale application to be rejected.  (Id. ¶¶ 26-27.)  In Count IV, Allen alleges intentional infliction of emotional distress ("IIED"), claiming that Wells Fargo's conduct in handling the short sale was egregious and resulted in emotional and other harm to Allen.  (Id. ¶ 32.)  Finally, Allen alleges unjust enrichment in Count V, asserting that Wells Fargo benefitted from the sale of the property through foreclosure in lieu of a short sale.  (Id. ¶ 39.)

## III.    PROCEDURAL HISTORY

This action was first filed in the Court of Common Pleas of Philadelphia County on August 13, 2014.  (Doc. No. 1, Ex. B at 21.)  On September 11, 2014, Wells Fargo removed the case to this Court pursuant to 28 U.S.C. § 1441.  (Doc. No. 1.)  On September 18, 2014, Wells Fargo filed a Motion to Dismiss the case.  (Doc. No. 5.)  On October 6, 2014, Allen, proceeding pro se, filed a Response in Opposition.  (Doc. No. 6.)  On November 25, 2014, this Court heard oral argument on the Motion.  (Doc. No. 13, Mot. to Dismiss H'rg Tr., Nov. 25, 2014)  The Motion is now ripe for consideration.  As noted above, Defendant's Motion to Dismiss (Doc. No. 5) will be granted and the Complaint will be dismissed.

## IV.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550

U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"

Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## V.   ANALYSIS

### A.   Allen's Tort Claims Fail as a Matter of Law

#### 1.   Allen's tort claims are time-barred

In his Complaint, Allen alleges three tort claims against Wells Fargo:  negligence (Count III), negligent misrepresentation (Count II), and IIED (Count IV).  (Doc. No. 1, Ex. A ¶¶ 18-35.) These claims are governed by Pennsylvania's statute of limitations, and will be dismissed because they are time-barred.[4]

Under Pennsylvania law, an action for negligence, negligent misrepresentation, and IIED must be commenced within two years.  42 Pa. Cons. Stat. Ann. § 5524(7) (West 2014) (providing that an action for injury to person or property founded upon negligent, intentional, or other tortious conduct or any other action or proceeding including deceit or fraud must be commenced within two years).  As a general rule, "the statute of limitations begins to run as soon as the right to institute and maintain the suit arises."  Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007).  Under Pennsylvania law, the determination must also consider the extent of plaintiff's knowledge of the event.  Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000) (holding that the statute is tolled until the plaintiff knows or reasonably should know of the event).  The commencement of the statute of limitations period can only be decided as a matter

---

[4]   Allen attempts to skirt the two-year statute of limitations by contending that these claims sound in contract because the short sale packet constitutes a binding contract with Wells Fargo.  (Doc. No. 6 at 7-8.)  Allen's argument, however, is without merit.  Allen did not allege a breach of contract claim in his Complaint and his three tort claims cannot be reclassified as breach of contract claims.  Moreover, Allen has not shown that there was an agreement to complete the short sale between the parties.

of law "where the facts are so clear that reasonable minds <u>cannot differ</u> . . . ." <u>Id.</u> (emphasis in original).

For purposes of calculating the statute of limitations, Allen does not provide the exact date of the events giving rise to his claims, but the date of his agreement to sell the property to the buyer, April 12, 2012, serves as one temporal benchmark.  (Doc. No. 6, Ex. A at 21.) Another benchmark is June 5, 2012, the date of the sheriff's sale.  (Doc. No. 5, Ex. 5 at 3.) From the Complaint, it is clear that Allen was aware of his alleged injury, which was either the denial of the short sale application before the sheriff's sale, or the sheriff's sale itself.  (Doc. No. 1, Ex. A ¶ 18.)  Specifically, Allen pled that "Wells Fargo's actions and/or inaction botched the application process, allowing the property to go to sheriff's sale."  (<u>Id.</u>)  Based on this timeline, the latest possible time the statute of limitations could begin to run was on June 5, 2012, the date of the sheriff's sale.  This event took place two years and two months before Allen filed the Complaint on August 13, 2014.[5]  (Doc. No. 1, Ex. A at 20.)  Therefore, Allen has failed to state a claim for negligent misrepresentation, negligence, and IIED because they are time-barred by the two-year limitations period.

### 2.     Wells Fargo owed no duty to Allen in regard to his claims of negligence and negligent misrepresentation

Allen's claims of negligence and negligent misrepresentation also fail because Wells Fargo does not owe Allen a duty as a matter of law.  First, to state a cause of action for negligence, a plaintiff must show:

---

[5]  A sheriff's sale becomes final when a deed is executed.  Here, the deed was executed on June 5, 2012.  Allen had a right to file a petition to set aside the sheriff's sale, but did not do so.  Thus, June 5, 2012 is the last relevant day of this action before the filing of the Complaint.  <u>See</u> <u>Butler v. Lomas & Nettleton Co.</u>, 862 F.2d 1015, 1019 (3d Cir. 1988) (holding that the date of the sheriff's sale is the effective date of the deed if no petition to set aside the sheriff's sale is made).

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

2. A failure on his part to conform to the standard required;

3. A reasonably close causal connection between the conduct and the resulting injury . . . ;

4. Actual loss or damage resulting to the interests of another.

Casey v. Geiger, 499 A.2d 606, 612 (Pa. Super. Ct. 1985).   To state a claim for negligent

misrepresentation, a plaintiff must show:

1. [A] misrepresentation of a material fact;

2. [M]ade under circumstances in which the misrepresenter ought to have known its falsity;

3. [W]ith an intent to induce another to act on it; and

4. [W]hich results in injury to a party acting in justifiable reliance on the misrepresentation.

Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).   Importantly, like a negligence claim, to state a

claim for negligent misrepresentation, a plaintiff must show the "existence of a duty owed by

one party to another."   Id.

Here, Allen has not plausibly alleged claims of negligence or negligent

misrepresentation because Wells Fargo did not owe him a duty.   Under Pennsylvania law, a

lender generally does not owe a duty to a borrower.   See, e.g., Schnell v. Bank of N. Y. Mellon,

828 F. Supp. 2d 798, 806 (E.D. Pa. 2011) (denying plaintiff's negligent misrepresentation claim

under Pennsylvania law against lender because "a lender acts in his financial interest and does

not owe a fiduciary duty to the borrower"); Caplen v. Sec. Nat'l Serv. Corp., 514 F. Supp. 2d

746, 752 (E.D. Pa. 2007) (no fiduciary duty owed by mortgagee to mortgagor); I&S Assocs.

Trust v. LaSalle Nat'l Bank, Civ. A. No. 99-4956, 2001 WL 1143319, at *7 (E.D. Pa. Sept. 27, 2001) ("[T]he lender-borrower relationship ordinarily does not create a fiduciary duty.").

Moreover, Wells Fargo owed no duty to Allen to modify the loan through a short sale of the property.  No express requirement, contractual or otherwise,[6] has been shown in this case that would afford Allen the right to a loan modification through approval of a short sale.  Rather, in the event of a default, the mortgage expressly provides that the lender may accelerate all sums due under the mortgage and seek foreclosure.  (Doc. No. 5, Ex. 1 ¶ 22.)  Courts have held that absent a contractual agreement or law to the contrary, there is no obligation requiring a bank or other institutional lender to modify a loan, or to mitigate its damages through such a modification, by way of a short sale or other means.  See, e.g., U.S. Bank Ass'n v. Smith, Civ. A. No. 14-4324, 2015 WL 437572, *4 (E.D. Pa. Feb. 3, 2015) (holding that the lender, a bank, had no duty to "mitigate its damages" by accepting a short sale and request for loan modification, stating that borrower "cite[d] no law that imposes on the Bank a duty to mitigate in the ways he discusses"); U.S. Bank Nat'l Ass'n v. Greenfield, Civ. A. No. 1:12-cv-2125, 2014 WL 3908127, at *3 (M.D. Pa. Aug. 11, 2014) (granting lender's motion for summary judgment and stating "U.S. Bank does not have any obligation to modify a loan or mortgage upon default . . . .  Under the terms of the [p]romissory note and [m]ortgage, U.S. Bank is entitled to seek foreclosure").[7]

---

[6]  Allen argues that the short sale brochure outlining the potential availability of a short sale gives rise to an implied contractual duty by Wells Fargo to "properly and fully process the [short sale] application in a timely manner set forth by their own deadline imposed."  (Doc. No. 1, Ex. A ¶¶ 37-38.)  However, neither the short sale brochure nor Allen's application create a binding contract between Allen and Wells Fargo.

[7]  In view of the Court's ruling on the statute of limitations and the fact that Wells Fargo owed no duty to Allen, there is no need to decide the applicability here of two defenses raised by

3.     **Allen's IIED claim also fails because he cannot show physical injury resulting from severe emotional distress**

Plaintiff's claim for IIED is also barred because Plaintiff has failed to show physical harm resulting from severe emotional distress and that Wells Fargo's conduct was "extreme and outrageous."

Under Pennsylvania law, there are four elements to an IIED claim. A plaintiff must establish that:

1.   The defendant's conduct was intentional or reckless;

2.   The defendant's conduct was extreme and outrageous;

3.   The defendant's conduct caused emotional distress; and

4.   The resultant emotional distress was severe.

DiLoreto v. Costigan, 600 F. Supp. 2d 671, 691 (E.D. Pa. 2009 ) aff'd 351 F. App'x 747 (3d Cir. 2009).

a.     **Allen has not suffered physical harm**

In satisfying the fourth element of an IIED claim, that defendant's conduct caused severe emotional distress, Pennsylvania law, as interpreted by the federal courts, requires that a plaintiff show "some type of physical harm due to the defendant's outrageous conduct."[8] DiLoreto, 600 F. Supp. 2d at 691; see also Jacobs v. City of Pittsburgh, Civ. A. No. 08740, 2011

---

Defendant, the gist of the action and economic loss doctrines.  Defendant contends that the tort claims should be dismissed on these two defenses.

[8]   The Pennsylvania Supreme Court has not explicitly recognized the existence of the tort of IIED, let alone a requirement that physical injury is necessary to make out an IIED claim. Mzame v. Winfrey, 693 F. Supp. 2d 442, 512 (E.D. Pa. 2010).  Rather, the Pennsylvania Superior Court has explicitly recognized the viability of an IIED claim, and "state and federal courts within the Third Circuit recognize that physical injury is a prerequisite for such a claim." Id.

WL 1584869, at *10 (W.D. Pa. Feb. 18, 2011) (stating same and dismissing IIED claim for failure to allege physical injury).

Allen does not sufficiently allege a cause of action for IIED because he does not support the claim with any showing that he sustained physical harm resulting from the severe emotional distress.  In his Complaint, Plaintiff alleges emotional distress damages in the form of "mental and emotional distress, anxiety, embarrassment, humiliation, and damage to his reputation, now and for the foreseeable future."  (Doc. No. 1, Ex. A ¶ 34.)  Courts in this district recognize these conditions as emotional harm, not physical harm, and define "physical harm" to encompass "bodily harm" that are physical manifestations of emotional distress.  See, e.g., Mitchell v. Comm. Educ. Ctrs., Inc., Civ. A. No. 14-5026, 2015 WL 4770652, at *7 (E.D. Pa. Aug. 11, 2015) (dismissing IIED claim where "[p]laintiff allege[d] merely that Defendant's acts caused 'emotional distress and anxiety'" and failed to allege "physical manifestations of this emotional distress"); Ghrist v. CBS Broadcasting, 40 F. Supp. 3d 623, 631 (W.D. Pa. 2014) (dismissing IIED claim based on allegations of harm to reputation and severe emotional distress absent allegation of physical harm or competent medical evidence of the same); Black v. Comm. Educ. Ctrs., Inc., Civ. A. No. 13-6102, 2014 WL 859313, at *5 (E.D. Pa. Mar. 4, 2014) (refusing to find physical harm where plaintiff suffered "emotional distress and anxiety" that did not cause "bodily harm" as a result of her distress).

> **b.     Wells Fargo did not engage in extreme or outrageous conduct**

Moreover, Allen has not set forth any facts that would show that Wells Fargo's denial of his short sale application was "extreme and outrageous" conduct in satisfaction of the second element of an IIED claim.

Under Pennsylvania law, a court must determine in the first instance whether defendant's conduct can reasonably be regarded as being so extreme and outrageous to permit recovery.

Corbett v. Morgenstern, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (citing Cox. v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988)).   In order for conduct to be extreme and outrageous, it must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   Buczek v. First Nat'l Bank, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987); see also Platek v. Safeguard Props., Inc., Civ. A. No. 12-1607, 2014 WL 2808908, at *2 (W.D. Pa. June 19, 2014) (stating same).

Denying the short sale application as untimely was not "egregious conduct" that "violated all bounds of decency."   It was simply a business decision Wells Fargo made in the absence of a duty or obligation to modify Allen's mortgage in any way or to accept and process his short sale application.   This is especially true where Allen did not begin the short sale process until months after an uncontested judgment in foreclosure was entered against him.   See Platek, 2014 WL 2808908, at *2 (holding that defendant property preservation company's "unresponsiveness" to plaintiff's telephone calls following foreclosure did not give rise to an IIED claim in light of the fact that plaintiff defaulted on his mortgage, did not contest the foreclosure judgment entered against him, and was not residing at the premises during the time in question); see also Messer v. First Fin. Fed. Credit Union of Md., Civ. A. No. 11-4144, 2012 WL 3104604, at *3 n.27 (E.D. Pa. July 30, 2012) ("Courts in this district have suggested that unjustified foreclosure of a residential property might, in egregious circumstances, support a claim for intentional infliction of emotional distress, but even in that context have yet to find circumstances that meet the outrageous conduct requirement.")

**B.      The Claim of "Deceptive Business Practices" in Violation of the Consumer Protection Law Fails Because Allen Did Not Suffer an Ascertainable Loss**

**1.      Standard under the UTPCPL**

In Count I of the Complaint, Allen alleges that Wells Fargo engaged in "deceptive business practices" based on Wells Fargo's failure to process the short sale application for the property.  (Doc. No. 1, Ex. A ¶¶ 15-23.)  As noted above, there is no such cause of action in Pennsylvania.  However, under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), a private right of action for deceptive practices is permitted.  73 Pa. Cons. Stat. §§ 201-2(4)(xxi), 201-9.2(a).

In such a private right of action under the UTPCPL, a plaintiff must prove that he:

purchase[d] or lease[d] goods or services primarily for personal, family or household purposes and thereby suffer[ed] [an] ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act.

73 Pa. Cons. Stat. § 201-9.2(a).

Allen claims that as a result of Wells Fargo's deceptive business practices, he "suffered trauma; damage and continuing damage to his credit report; and loss of said asset (164)[9] [the property], all of which, now and in the future, will cause a continued state of confusion; great suffering (personal and economic), and considerable degradation."  (Doc. No. 1, Ex. A. ¶ 22.)

Allen claims that Wells Fargo caused these damages because it omitted crucial information regarding the short sale requirements and willfully allowed the short sale deadline to pass and the sheriff's sale to proceed.  As mentioned above, Allen defaulted on the mortgage in February 2010.  Wells Fargo commenced foreclosure proceedings in October 2010.  Allen failed to contest the action, and the state court issued a writ of execution in foreclosure on

---

[9]    Allen does not specify what asset is referred to by the use of "(164)."  The Court infers from the facts of this case that he is referring to the property at 164 West Salaignac Street.

March 28, 2011.  Over a year after foreclosure was entered against the property, in April 2012, Allen filed the short sale application, the rejection of which gives rise to most of Allen's damage claims.

> **2.   Allen has not shown an actual or ascertainable loss in regard to his claim under the UTPCPL**

Allen's damage claims under the UTPCPL are alleged to be "harm to credit score," "loss of said asset" meaning the property, "trauma," "confusion," "great suffering (personal and economic)" and "considerable degradation."  (Doc. No. 1, Ex. A ¶ 22.)  Because Allen cannot show that he suffered an ascertainable loss in conjunction with these damage claims, his UTPCPL claim will be dismissed.

Under the UTPCPL, a plaintiff must prove that he suffered an "ascertainable loss of money or property, real or personal," as a result of the defendant's conduct.  73 Pa. Cons. Stat. § 201-9.2(a).  An actual loss of money or property must have occurred to state a cognizable UTPCPL claim.  Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013).

First, Allen does not show here that he suffered an ascertainable loss as a result of Wells Fargo's denial of the short sale application because he admits in the Complaint, and did so on the record at the Motion to Dismiss hearing, that the property already had been foreclosed on at the time of the attempted short sale and that he was not going to profit from the short sale. (Doc. No. 1, Ex. A ¶ 9; Mot. to Dismiss Hr'g Tr. 9.)  Furthermore, Plaintiff admits that although he claimed damages for "loss of said asset," referring to the property itself, he was not going to have title to the property even had it gone through the short sale process.  (Mot. to Dismiss Hr'g Tr. 19:16-19.)

Second, Allen does not owe Wells Fargo any money for a deficiency amount on the mortgage.  In fact, as mentioned above, Wells Fargo is not seeking any deficiency from Allen

because the statute of limitations for seeking such a deficiency has passed.  (Mot. to Dismiss Hr'g Tr. 9:16-18.)

Third, Allen's claims that failure to consummate the short sale caused damage to his credit score are too speculative to rise to the level of an actual, ascertainable loss of money or property required to state a claim under the UTPCPL.  The Pennsylvania Supreme Court has not yet addressed what constitutes "ascertainable loss" under the UTPCPL.  Kaymark v. Bank of Am., N.A., 783 F.3d 168, 180 (3d Cir. 2015).  However, federal courts in this district and lower Pennsylvania state courts require that the loss asserted be non-speculative based on the plain language of the UTPCPL.  Id.

Harm, if any, to Allen's credit score would have occurred at the time of the default judgment in foreclosure on March 28, 2011, over one year before Wells Fargo denied the short sale application as untimely on April 12, 2012.[10]  Any damages stemming from the foreclosure are not pertinent here because the judgment in the foreclosure action was not contested and was completed prior to the attempted short sale.  (Doc. No. 5, Ex. 3 at 9.)  Thus, Allen's claims that his credit score would have been rehabilitated if the short sale had been consummated is too speculative to serve as the basis of his UTPCPL claim because the foreclosure was already reported on his credit score about the time the foreclosure occurred.

Furthermore, Allen fails to specify the alleged damages stemming from the negative credit report beyond merely stating that it was negatively affected.  (Doc. No. 1, Ex. A ¶ 22.) For all these reasons, "the loss is merely a possible loss, which is insufficient to establish a UTPCPL claim."  Benner, 917 F. Supp. 2d at 362 n.16.

---

[10]  From reading the Complaint, however, it appears that Allen is alleging damage to his credit from the sheriff's sale and from the foreclosure interchangeably.

Lastly, Allen's claims of personal trauma, confusion, "great suffering," and "considerable degradation" are construed as damages for emotional distress.  Claims for emotional distress are not compensable under the UTPCPL.  73 Pa. Cons. Stat. § 201-9.2; <u>see Ferki v. Wells Fargo Bank Nat'l Ass'n</u>, Civ. A. No. 10-2756, 2010 WL 5174406, at *10 (E.D. Pa. Dec. 20, 2010). Accordingly, because Allen has not shown ascertainable loss, the UTPCPL claim will be dismissed.

### C. The Claim for Unjust Enrichment Fails Because Wells Fargo Did Not Benefit from the Sheriff's Sale

In Count V of the Complaint, Allen seeks to recover from Wells Fargo on the basis of unjust enrichment.  This claim must also be dismissed because Allen fails to allege a particular benefit conferred on Wells Fargo.

"An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." <u>Sevast v. Kakouras</u>, 915 A.2d 1147, 1153 n.7 (Pa. 2007) (citing <u>Schott v. Westinghouse Elec. Corp.</u>, 259 A.2d 443, 448 (Pa. 1969)).  "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another."  <u>AmeriPro Search, Inc. v. Fleming Steel Co.</u>, 787 A.2d 988, 991 (Pa. Super. Ct. 2001) (citation omitted). Without establishing the existence of a benefit conferred to the defendant, there cannot be a claim for unjust enrichment. <u>D.A. Hill Co. v. Clevetrust Realty Investors</u>, 573 A.2d 1005, 1010 (Pa. 1990).

Attempting to show such benefit, Allen pled that "Defendant gained asset of the home through foreclosure as a result of the improper handling of the short sale application process, therefore, being unjustly enriched benefiting [sic] to the misfortune of the plaintiff."  (Doc. No. 1, Ex. A ¶ 39.)  Although it is clear that Allen would have preferred a short sale to a sheriff's

sale, Allen does not plead how Wells Fargo benefitted from the sheriff's sale or from the rejection of the short sale. Wells Fargo did not recover an amount greater than it was owed by Allen. Moreover, after the sheriff's sale, Wells Fargo was entitled to sue Allen to recover the deficiency on the amount of the mortgage. No such suit was filed against Allen by Wells Fargo, and even if Wells Fargo had accepted Allen's short sale offer totaling $239,500, this would still be $1,500 short of the property's value of $241,000.

Accordingly, Wells Fargo did not benefit from the rejection of the short sale. Thus, Allen has not plead sufficient facts to sustain a claim for unjust enrichment.[11]

## VI.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted and Allen's Complaint will be dismissed with prejudice. An appropriate Order follows.

---

[11] "The Third Circuit has held that a Plaintiff whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility." Williams v. Bickell, Civ. A. No. 3:CV-12-1523, 2012 WL 5379171, at *5 (M.D. Pa. Aug. 17, 2012). Here the Court will not grant leave to amend. Amendment would be futile because at least one or more required elements of each claim is not curable. Further, on November 25, 2014, at the hearing on the outstanding Motion, Plaintiff had the opportunity to elaborate and discuss all claims. (See Mot. to Dismiss Hr'g Tr.) The Court is convinced that no additional facts could plausibly cure the defects in the allegations.